UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x

ALBERT L. ANDERSON,               :

                                 :

                Plaintiff,     :

                                 :                   **OPINION AND ORDER**

     - against -              :                10 Civ. 4941 (ER)

                                 :

CITY OF NEW ROCHELLE, CITY OF NEW   :

ROCHELLE DEPARTMENT OF PARKS AND   :

RECREATION, CITY OF NEW ROCHELLE     :

DEPARTMENT OF PUBLIC WORKS,         :

                                 :

                Defendants.   :

———————————————————————————x

Ramos, D.J.:

       Pro Se Plaintiff, Albert L. Anderson, commenced this action against the City of New

Rochelle (the "City"), City of New Rochelle Department of Parks and Recreation (the "Parks

Department") and City of New Rochelle Department of Public Works (collectively,

"Defendants") on June 25, 2010, alleging discrimination on the basis of race and age in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, the Age

Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621, *et seq.*, and New York State

Human Rights Law, N.Y. Exec. Law §§ 290-297.  Compl., Doc. 2, at 1.  The discriminatory

conduct alleged by Plaintiff is Defendants' failure to hire him for a full-time laborer position

with the City in July 2007.[1]  *Id.* at 2-3.  Plaintiff is an African American man and was

---

[1] In completing the "Complaint for Employment Discrimination" form, Plaintiff checked the boxes for "failure to hire" and "failure to promote."  Doc. 2, at 2.  In the narrative portion of his Complaint, Plaintiff refers only to the City's failure to hire him for the full-time laborer position, and the parties describe the Plaintiff's allegations solely in terms of a "failure to hire" in their motion papers as well.  In addressing the instant motion, the Court has done the same, as "[t]he case law does not distinguish between the legal standards for a failure to hire claim and a failure to promote claim." *O'Leary v. N.Y. State Unified Court Sys.,* No. 05 Civ. 6722 (HB), 2007 WL 2244483, at *5 n. 14 (S.D.N.Y. Aug. 6, 2007).

approximately sixty-six years old at the time of the alleged discriminatory conduct.  Defs.' 56.1 Stmt. ¶ 9.[2]

Before the Court is Defendants' Motion for Summary Judgment seeking dismissal of Plaintiff's complaint in its entirety pursuant to Fed. R. Civ. P. 56.  Doc. 14.  For the reasons set forth below, Defendants' Motion is GRANTED.

## I. Background

The following facts are undisputed except where otherwise noted.

### A. Anderson's Employment as a Seasonal Laborer

The Parks Department hires approximately eleven part-time employees to work as seasonal laborers from April through December of each year.  Defs.' 56.1 Stmt. ¶¶ 14-15.  The City requires individuals to pass a laborer's examination, which includes the identification of tools and similar questions, in order to work as a seasonal laborer.  *Id.* ¶ 18.  Plaintiff took the examination for a seasonal laborer position with the City in July 2006 and applied for employment in August 2006.  *Id.* ¶ 19.  Plaintiff started working as a seasonal laborer in September 2006.  *Id.* ¶ 20.

Plaintiff's first assignment was to work at Davenport Park, under the supervision of James Williams, who was also employed as a seasonal laborer.  *Id.* ¶ 21.  Williams is African American and was approximately sixty years old in 2007.  *Id.* ¶ 22.  In September or October 2006, Williams complained to his supervisors, Anthony Tardibuono, Supervisor of Maintenance for the Parks Department, and Brian O'Rourke, the foreman for the Parks Department, that Plaintiff refused to complete certain assignments, stopped work early at the end of each day, talked to people in the park instead of working, and disregarded Williams' directions.  *Id.* ¶¶ 12-

---

[2] Citations to "Defs.' 56.1 Stmt." refer to the Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1.  Doc. 17.

13, 23; Marcoline Decl. Ex. Q, ¶ 3. [3]  O'Rourke is white and was approximately thirty-seven years old in 2007.  Ex. J, at 126.  Tardibuono is also white, and was at least in his mid-fifties in 2007.[4]  Pl.'s Response Mem. Law Opp. Defs.' Mot. Summ. Judg. ("Pl.'s Mem.") 3, Doc. 25; Ex. Q, ¶ 1.

At Williams' request, Plaintiff was reassigned to the leaf pickup crew in November 2006, where he worked under the supervision of Robert Maravilla.[5]  Defs.' 56.1 Stmt. ¶ 24; Ex. Q, ¶ 3. Maravilla is Hispanic and was approximately thirty years old in 2007.  Defs.' 56.1 Stmt. ¶ 25. Maravilla also complained to Tardibuono and O'Rourke about problems with Plaintiff's performance.[6]  Ex. H, at 101-02.  As a result, O'Rourke transferred Plaintiff to a vacuum crew under the supervision of Timothy Fucile.  Ex. J, at 133.  Fucile is white and was approximately thirty-three years old in 2007.  Defs.' 56.1 Stmt. ¶ 29.  Fucile complained to Tardibuono and O'Rourke about problems with Plaintiff's work performance and attitude, and asked to have him transferred to another crew.  *Id.* ¶ 31.  O'Rourke also personally observed Plaintiff's work on the vacuum crew and saw him leaning on a rake and working much slower than the other members of the crew.  *Id.* ¶ 32.  As a result, Plaintiff was reassigned to the garbage crew for the remainder

---

[3] "Marcoline Decl." refers to the Declaration of Thomas J. Marcoline in Support of Defendants' Motion for Summary Judgment.  Doc. 16.  All subsequent citations to the Exhibits attached to the Declaration of Thomas J. Marcoline are referenced herein as "Ex.__."

[4] Tardibuono's age is not identified anywhere in the record; however, he began his employment with the City in 1971.  Ex. Q, ¶ 1.

[5] Although Plaintiff purports to dispute Defendants' descriptions of his assignments and transfers to different work crews by arguing that he did not work as part of those crews on a regular basis, Pl.'s Counter-Stmt. Material Facts to Defs.' Rule 56.1 Stmt. ("Pl.'s 56.1 Stmt.") ¶¶ 24, 26, 28, 33, Doc.26, such factual issues are immaterial "because they will not affect the disposition of this case," and "need not be resolved as they have no bearing on the Court's decision."  *Douglas v. Dist. Council 37 Mun. Emps.' Educ. Fund Trust*, 207 F. Supp. 2d 282, 288 (S.D.N.Y. 2002).

[6] Maravilla testified that Plaintiff had trouble operating the necessary equipment, worked slower than others, reacted with anger and frustration when Maravilla tried to provide feedback or guidance to Plaintiff, and was insubordinate. Ex. H, at 99-101.  Maravilla also testified that he informed Tardibuono and O'Rourke that he was having problems with Plaintiff's performance; however, he did not testify concerning the specific content of his complaints to his supervisors.  *Id.* at 101-02.  O'Rourke testified that Maravilla complained to him about Plaintiff "standing around and not keeping up with the crew," and that Maravilla "wanted to have [Plaintiff] moved off of his crew."  Ex. J, at 132.

of the 2006 season.  *Id.* ¶ 33.  In accordance with the City's normal practices, the seasonal

laborers, including Plaintiff, were laid off in December 2006.  *Id.* ¶¶ 17, 35.

Plaintiff was hired as a seasonal laborer again in April 2007.  *Id.* ¶ 36.  Mario Rizzo, the

individual who was ultimately offered the full-time position, was also hired as a seasonal laborer

in the spring of 2007.  Ex. K, at 159; *see also* Ex. O.  Rizzo is white and was in his late 20s or

early 30s in 2007.[7]  Defs.' Mem. Law Supp. Mot. Summ. Judg. ("Defs.' Mem.") 5, Doc 15.

During the 2007 season, Tardibuono received similar complaints about Plaintiff's job

performance and attitude from Plaintiff's supervisors.  Defs.' 56.1 Stmt. ¶ 37; Ex. K, at 160.

Tardibuono did not receive any complaints about Rizzo's work or behavior.  Ex. K, at 160.

O'Rourke testified that he received positive feedback about Rizzo's work performance and that,

based on his personal observations of Rizzo's work, Rizzo "looked like he had done the work

before, he had experience and . . . he seemed to be a good guy with a good attitude."  Ex. J, at

140-41.  Maravilla, who supervised Rizzo from the beginning of the 2007 season, testified that

Rizzo was "efficient" and that he "[w]hen you told him what to do, he would go ahead and do

it."  Ex. H, at 104.  Maravilla provided O'Rourke and Tardibuono with positive feedback about

Rizzo's work; he told them that Rizzo "did his job, always did it as was he was told, [and] so on

and so forth."  *Id.* at 105.  Tardibuono also observed Rizzo's work in the spring of 2007 and

found that Rizzo "seemed to know what he was doing, [and] that he 'knew landscaping.'"  Defs.'

56.1 Stmt. ¶ 49.

### B.  Selection for the Permanent Laborer Position

At the beginning of the 2007 season, Tardibuono made an announcement about a new

full-time laborer position with the Parks Department.  *Id.* ¶ 38.  The announcement was made in

---

[7] There is no evidence in the record from which the Court could discern Rizzo's exact age at the time he was hired
for the full-time laborer position.

the lunchroom of the Parks Department headquarters on the first payday when all of the employees appeared to receive their checks.  Ex. J, at 138, Ex. K, at 158; Ex. H, at 105.  Plaintiff claims that he did not learn of the position until after Rizzo had been hired.  Pl.'s Mem. 2-3.[8]

The permanent "laborer" position is a labor class position under Civil Service Law § 43. Defs.' 56.1 Stmt. ¶ 39.  There is no competitive examination for the position, and the City was free to hire anyone on the laborer's list who met the minimum qualifications for the position.  *Id.* The laborer's list consists of people who have taken and passed the City's most recent laborer's test.  *Id.* ¶ 40.  The City also required that the position be filled by someone with a drivers' license.  *Id.*  A commercial drivers' license ("CDL") was not a requirement for the position, *id.* ¶ 41; however, it was considered a "plus."  Ex. J, at 140; Ex. K, at 157.  The list of candidates who met the minimum requirements for the job in 2007 was comprised of three individuals:  Plaintiff, Joe Tadillo and Mario Rizzo.[9]  Defs.' 56.1 Stmt. ¶ 42.

While Tardibuono and O'Rourke were involved in the selection process for the full-time laborer position, *id.* ¶ 43, William Zimmerman, Commissioner of the Parks Department, had final decision-making authority for hiring full-time employees.  Ex. L, at 174.  Zimmerman is white and was approximately fifty-four years old in 2007.  *Id.* at 173-74.  In order to make a hiring recommendation to Zimmerman, O'Rourke and Tardibuono observed the candidates' work, reviewed their civil service applications and considered factors such as CDLs, attendance,

---

[8] The Court has accepted Plaintiff's assertion as true for purposes of this motion, notwithstanding the sworn testimony of O'Rourke and Tardibuono that Plaintiff was present for the announcement, Ex. J, at 138; Ex. K, at 158, because the Court is required to draw all reasonable inferences in favor of the non-moving party on a motion for summary judgment.  However, Plaintiff's assertion that Tardibuono previously testified or otherwise admitted that he did not tell Plaintiff about the position, Pl.'s 56.1 Stmt. ¶¶ 38, 46; Pl.'s Mem. 3, is not supported by any evidence in the record.  The evidence to which Plaintiff cites in his Memorandum ("SDHR Transcript, Document #s 200, 202 to Defendants' discovery responses") is not attached to his opposition papers or otherwise included in the record.

[9] The evidence in the record indicates that Tadillo was not recommended for the position because of a drinking problem.  Ex. K, at 162.  There is no information in the record about Tadillo's race, age or qualifications for the full-time position.

work performance, attitude and prior landscaping experience.  Ex. J, at 142; Ex. K, at 160-61.
There was no formal application or interview process for the full-time job.  Ex. K, at 159-60.

During a meeting with Zimmerman in or around June of 2007, Tardibuono and O'Rourke
informed the Commissioner about the three individuals who were eligible for the position and
recommended that Rizzo be hired.  Defs.' 56.1 Stmt. ¶ 49; Ex. J, at 143-44.  Their
recommendation was based on Rizzo's good work performance and attitude, his near perfect
attendance record, his four years of professional landscaping experience and his expressed
interest in the position.  Defs.' 56.1 Stmt. ¶ 49; Ex. J, at 144; Ex. K, at 167; Ex. Q, ¶ 9.  At the
meeting, Zimmerman requested documentation regarding each of the eligible individuals to
"verify [the] recommendation."  Ex. L, at 177; Ex. K, at 166.  Tardibuono subsequently provided
Zimmerman with the candidates' labor test applications, attendance records and paperwork with
information about verified licenses and prior experience.  Ex. L, at 178.  After reviewing the
requested paperwork and meeting with Tardibuono for a second time, Zimmerman "concurred
with [Tardibuono's] recommendation to hire Mr. Rizzo."  *Id.*; Ex. K, at 166-67.  Rizzo was
offered the position in early July 2007.  Ex. K, at 167.

Plaintiff continued to work for the Parks Department for two or three weeks after
Defendants offered the full-time laborer position to Rizzo.  *Id.* at 167.  At the end of July,
O'Rourke reassigned Plaintiff to work at City Park.  Defs.' 56.1 Stmt. ¶ 56; Ex. K, at 168; Ex. Q,
¶ 7.  Plaintiff did not report to work at City Park the following week.  Ex. Q, ¶ 8.  The City held
the job open for Plaintiff until August 10, 2007; however, he never returned to work for the
Parks Department.  *Id.*; Defs.' 56.1 Stmt. ¶¶ 57-58.  It is undisputed that Plaintiff quit his job
with the City.  Defs.' 56.1 Stmt. ¶ 58.  Plaintiff claims that he quit when he learned that he was
passed over for the full-time laborer position.  Pl.'s 56.1 Stmt. ¶¶ 57-58.

6

### C.  Allegations of Discrimination

Plaintiff did not identify the individuals who he believes are responsible for the alleged discrimination anywhere in his Complaint, and Plaintiff never made any complaints of discrimination during his employment with the City.  Defs.' 56.1 Stmt. ¶ 59.  In opposing the instant motion, Plaintiff has not alleged that any of his co-workers or supervisors made any discriminatory comments or engaged in any discriminatory conduct that he believes were related to his age or race.  The only person specifically mentioned in Plaintiff's opposition papers is Tardibuono.  Plaintiff's sole allegation against Tardibuono—which is not based on personal knowledge or otherwise supported by any the evidence in the record—is that he has never hired any African Americans as full-time laborers.  Pl.'s 56.1 Stmt. ¶ 55; Pl.'s Mem. 3.  Plaintiff also alleges that there were no African Americans employed as full-time laborers by the Defendants in July 2007.  Pl.'s 56.1 Stmt. ¶ 57.

### D.  Administrative Proceedings

On or about October 26, 2007, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race and age.  Defs.' 56.1 Stmt. ¶ 2.  A hearing before an Administrative Law Judge ("ALJ") for the SDHR was held on April 6, 2009.  *Id.* ¶ 3.  Counsel for the SDHR appeared on Plaintiff's behalf.  *Id.* ¶ 4.  Plaintiff testified at the hearing and had the opportunity to cross-examine witnesses.  *Id.*  On or about May 11, 2009, the ALJ issued Recommended Findings of Fact, Opinion and Decision, and Order that Plaintiff's complaint be dismissed, because the City had articulated a legitimate non-discriminatory reason for its decision to hire Rizzo for the full-time position, and there was no evidence of discrimination.  *Id.* ¶ 5.  On or about January 26, 2010, Department of Human Rights ("DHR")

Commissioner Galen Kirkland issued an Order adopting the ALJ's Recommended Order as the Final Order of the SDHR.  *Id.* ¶ 6.  The DHR Commissioner's Order contained information advising the parties about their rights to appeal the decision to the New York State Supreme Court.  *Id.*  Plaintiff did not appeal the DHR Commissioner's Order.  *Id.* ¶ 8.  On or about April 10, 2010, the EEOC adopted the findings of the SDHR and issued Plaintiff a Right to Sue letter. *Id.* ¶ 7.

## II. Legal Standard Governing Motions for Summary Judgment

### A.  Summary Judgment Standard

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the relevant law.  *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23).  "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order

to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)). "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A motion for summary judgment cannot be defeated on the basis of mere denials or unsupported alternative explanations of facts. *Senno*, 812 F. Supp. 2d at 467. The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). "[T]he non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

**B.  Additional Summary Judgment Standards for Employment Discrimination Cases**

While, courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.

2008), "'summary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'" *Hongyan Lu v. Chase Inv. Servs. Corp.,* 412 F. App'x 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000)).  Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Feingold v. New York,* 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).  Thus, the Supreme Court has "reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (internal quotation marks omitted) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524 (1993)).  Accordingly, "[e]ven in the discrimination context, [] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137.  A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'"  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

### C.  Local Rule 56.1

Under Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), a party moving for summary judgment pursuant to Fed. R. Civ. P. 56, must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local R. 56.1(a).  In answering a motion for summary judgment, litigants in this District are required to specifically respond to the assertion of each purported

undisputed fact by the movant and, if controverting any such fact, to support its position by citing to admissible evidence in the record.  Local Rule 56.1(b), (d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  If the moving party seeks summary judgment against a *pro se* litigant, it is also required to notify the *pro se* litigant of the requirements of Fed. R. Civ. P. 56 and Local Civil Rule 56.1.  Local R. 56.2.  Once served with a statement pursuant to Local Rule 56.2, "[*p*]*ro se* litigants are then not excused from meeting the requirements of Local Rule 56.1."  *Wali v. One Source Co.,* 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear Co. v. 1-800-BEARGRAM Co.,* 373 F.3d 241, 246 (2d Cir. 2004)).

Pursuant to Local Rule 56.1(c), each factual statement set forth in the moving party's Rule 56.1 statement "will be deemed to be admitted for purposes of this motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local R. 56.1(c); *see also T.Y. v. N.Y. City Dep't of Educ.,* 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."), *cert. denied*, 130 S. Ct. 3277 (2010).  However, "where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions."  *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001)).

Here, Defendants filed and served a statement pursuant to Local Rule 56.1, setting forth the undisputed material facts with citations to admissible evidence in the record.  Doc. 17.  In addition, Defendants duly served and filed a statement pursuant to Local Rule 56.2, apprising

Plaintiff of the potential consequences of not responding to the motion as required by the Local

Rules.  Doc. 18.  In opposing the instant motion, Plaintiff filed a response to Defendants' Rule

56.1 Statement that contains statements corresponding to the paragraphs in Defendants' Rule

56.1 Statement; however, none of Plaintiff's responses contain citations to any evidence in the

record.  A number of Plaintiff's responses are also improper because he states that a fact is

disputed based on assertions that do not specifically controvert the facts set forth by Defendants,

*e.g.*, Pl.'s 56.1 Stmt. ¶¶ 23, 27, 34, 37, or because Plaintiff claims he does not have any basis

upon which to admit or deny the facts set forth by Defendants.  *E.g.*, *id.* ¶¶ 39-44.  Such

responses are impermissible under Local Rule 56.1.  *See, e.g.*, *Buckman v. Calyon Secs.*, 817 F.

Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011) ("Plaintiff had ample opportunity during discovery to

determine the accuracy of the relevant facts and may not now claim that he lacks sufficient

information.").  In opposing the instant motion, Plaintiff did not submit a sworn affidavit or

declaration containing his own evidence.[10]

In addressing the present motion, the Court is mindful that Plaintiff is proceeding *pro se*

and that his submissions are "held to less stringent standards than formal pleadings drafted by

lawyers."  *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (per curiam) (internal quotation marks omitted)

(quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y. City Dep't of*

*Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that same

principles apply to briefs and opposition papers filed by *pro se* litigants (citing *Ortiz v. McBride*,

323 F.3d 191, 194 (2d Cir. 2003))).  Although "*pro se* status 'does not exempt a party from

compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of*

---

[10] In his Memorandum of Law, Plaintiff cites to six documents that he identifies by what appear to be Bates numbers, and which he says are attached to his submission.  Two of the documents cited by Plaintiff were not attached to his Memorandum.  *See supra* note 8.  The remaining four exhibits are not properly identified or authenticated, and, more importantly, they do not support the assertions in Plaintiff's opposition papers.  *See infra* notes 17-19.

*Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.

1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally

and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,*

174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Therefore, because Plaintiff is proceeding *pro se*, this Court has endeavored to discern from the

record if there is any evidentiary support for the assertions contained in his Rule 56.1 Statement

and opposition papers, and to determine if there are any other material issues of fact based on the

evidence in the record. *Geldzahler v. N.Y. Med. Coll.*, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y.

2010).

 Additionally, despite Plaintiff having received a Rule 56.2 Notice, advising him that his

claims might be dismissed if he did not respond to the motion by filing either sworn affidavits

based on personal knowledge or other admissible evidence, this Court takes into account his

status as a *pro se* litigant, and will consider the unsworn statements in his Rule 56.1 Statement

and opposition papers that are based on personal knowledge or supported by other admissible

evidence in the record, on the assumption that if his allegations were sufficient to raise an issue

of fact, Plaintiff would be given an opportunity to submit an affidavit properly attesting to those

allegations. *Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 603 n.1 (S.D.N.Y. 2004).

### III. Legal Standard for Claims under Title VII and the ADEA

 All of Plaintiff's employment discrimination claims are analyzed under the three-step

burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792 (1973).[11]  Under the *McDonnell Douglas* framework, a plaintiff must first

---

[11] Courts apply the same legal framework to analyze claims under Title VII, the ADEA, and the NYSHRL.  *See*,
*e.g.*, *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 109 (2d Cir. 2011) (applying *McDonnell Douglas*
framework to Title VII, ADEA and NYSHRL claims); *see also Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93,
106 (2d Cir. 2010) (holding that, even after the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*,

demonstrate a *prima facie* case of discrimination.  411 U.S. at 802.  In order to do so, a plaintiff

must show that:  (1) he is a member of a protected class; (2) he was qualified for the position in

question; (3) he suffered an adverse employment action; and (4) the adverse action took place

under circumstances giving rise to an inference of discrimination.  *Ruiz v. Cnty. of Rockland*, 609

F.3d 486, 491-92 (2d Cir. 2010).[12]

The Second Circuit has explained that a plaintiff's burden at this stage is *de minimis*.

*Abdu-Brisson,* 239 F.3d at 467.  Nonetheless, in order to state a *prima facie* case of

discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would

be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.*,

136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002), and cannot meet

its burden through reliance on unsupported assertions, *Goenaga*, 51 F.3d at 18, or "[s]tatements

that are devoid of any specifics, but replete with conclusions." *Griffin v. Ambika Corp.,* 103 F.

Supp. 2d 297, 308 (S.D.N.Y. 2000).

If a plaintiff successfully presents a *prima facie* case, a presumption of discrimination

arises, which the defendant must then rebut by offering legitimate and non-discriminatory

---

[12] 557 U.S. 167 (2009), this Circuit continues to apply the *McDonnell Douglas* burden-shifting framework to ADEA claims).  Because discrimination claims on the basis of age and race under the NYSHRL are analyzed under the same standards as claims brought under the ADEA and Title VII respectively, the Court has analyzed all of Plaintiff's discrimination claims together.  *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 114 n.3 (2d Cir. 2007), *abrogated in part on other grounds by Gross*, 557 U.S. 167 (2009); *see also Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997).

[12] Though there is case law indicating that a plaintiff ordinarily must allege that he applied for a specific position and was rejected therefrom in order to establish a *prima facie* failure-to-hire claim under Title VII, *Brown v. Coach Stores Inc.*, 163 F.3d 706, 710 (2d. Cir. 1998) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981) and *McDonnell Douglas*, 411 U.S. at 802), the applicability of that requirement depends on the facts of each particular case.  *Id.* ("[T]he general rule of *McDonnell Douglas* and *Burdine* is subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement."); *see also, e.g.*, *Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (holding that *Brown* requirement did not apply where plaintiff indicated to employer an interest in being promoted to a particular class of positions, but was not aware of specific available positions because employer never posted them, "as an employee by definition cannot apply for a job that he or she does not know exists.").  Where, as here, there is no formal application process for the position and Defendants claim that all current part-time employees were given equal consideration for the full-time job, the Court will not require Plaintiff to show that he applied for the specific position he was denied.

reasons for the adverse employment action demonstrated in the plaintiff's *prima facie* case. *Abdu-Brisson,* 239 F.3d at 468 (citing *Burdine*, 450 U.S. at 254).  The defendant's burden at this step of the analysis is also "light."  *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998).  "The employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior."  *Id.*  The Supreme Court has explained that defendant's burden "is one of production, not persuasion; [and] it 'can involve no credibility assessment.'"  *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 509).  If the defendant satisfies its burden at the second step of the test, "the presumption raised by the *prima facie* case is rebutted" and "drops from the case," *Burdine*, 450 U.S. at 255, 255 n.10, "and the sole remaining issue [is] discrimination *vel non*."  *Reeves*, 530 U.S. at 143 (internal quotation marks omitted) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)).

Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's articulated reason for the adverse employment action is merely a pretext for actual discrimination.  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 380-81 (2d Cir. 2003).  Under Title VII, a plaintiff can establish an unlawful employment practice by demonstrating that race was "*a motivating factor* for an[] employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m) (emphasis added).  Under the ADEA, the third step of the test is different.[13]  In addition to showing that the defendant discriminated against him on the basis of age, the plaintiff must also

---

[13] As explained in *Mattera v. JPMorgan Chase Corp.*, the third step of the *McDonnell Douglas* test for ADEA claims has changed as a result of the Supreme Court's holding in *Gross v. FBL Financial Services*, 557 U.S. 167 (2009), which set forth the more stringent "but-for" standard articulated above.  740 F. Supp. 2d 561, 571 n.8 (S.D.N.Y. 2010) (citing *Gorzynski*, 596 F.3d at 106-07).

show that age discrimination was a "but-for" cause of the adverse action, and not merely *one* of the motivating factors. *Gross*, 557 U.S. at 177, 180.

It is important to note, that "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine,* 450 U.S. at 253). In determining whether the plaintiff has satisfied this burden, the Court must consider the sum of all evidence of discrimination in its totality, and "examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001).

## IV. Plaintiff's Discrimination Claims

### A. *Prima Facie* Case of Discrimination

The first three elements of a *prima facie* case are not in contention. It is undisputed that Plaintiff was a member of a protected class under Title VII and the ADEA, because he is African American and he was approximately sixty-six years old when he was not chosen for the full-time laborer position in July 2007. It is also clear from the record that Plaintiff was minimally qualified for the position, because he was one of the three individuals Defendants identified as eligible for the full-time position based on the City's requirements for the job. Defs.' 56.1 Stmt. ¶ 42. This is all that is required at the *prima facie* stage. *Sista v. CDS Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006). Additionally, it is well-settled that a plaintiff can establish an adverse employment action on the basis of a failure to hire. *Sibilla v. Follett Corp.*, No. CV 10-1457 (AKT), 2012 WL 1077655, at *12 (E.D.N.Y. Mar. 30, 2012); *see also Stewart v. City of New York*, No. 11 Civ. 6935 (CM), 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012) ("Failure to

16

promote is specifically identified in *Burlington* as qualifying as an adverse employment action under Title VII." (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998))).

Defendants here challenge the fourth requirement of the *prima facie* case, arguing that Plaintiff has not offered any admissible evidence suggesting that anyone associated with the decision to offer the full-time position to Rizzo, rather than Plaintiff, was motivated by racial animus or age discrimination.  Defs.' Mem. 10-11.

For claims brought under Title VII, in order to raise an inference of discrimination at the *prima facie* stage, it is typically sufficient for a plaintiff to show that the position was filled by someone outside of his protected class.  *Morris v. Ales Group USA, Inc.*, No. 04 CV 8239 (PAC) (THK), 2007 WL 1893729, at *9 (S.D.N.Y. June 29, 2007) (citing *de la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996)).  For claims brought under the ADEA, courts look to whether the person who was chosen for the position was "substantially younger" than the plaintiff.[14]  *Rouse v. City of New York*, No. 08 CV 7419 (HB), 2009 WL 1532054, at *6 (S.D.N.Y. June 2, 2009) (citing *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 187 (2d Cir. 2006)).

Here, the fourth element is established, because Rizzo is white and was in his late 20s or early 30s when he was offered the full-time position over Plaintiff, thus giving rise to an inference of discrimination.  *See, e.g.*, *Saenger*, 706 F. Supp. 2d at 507 (fourth element established where plaintiff was replaced by someone twelve years younger); *see also Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 579 (S.D.N.Y. 2008) (promotion of employee fourteen years

---

[14] In *O'Connor v. Consolidated Coin Caterers Corporation*, the Supreme Court explained that "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that the [person chosen for the position] is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class," meaning someone under the age of forty.  517 U.S. 308, 313 (1996); *see also Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 78-79 (2d Cir. 2005) (explaining how the differences between the ADEA and other employment discrimination statutes, such as Title VII, alter the showing that is required to satisfy the fourth element of a *prima facie* case).

younger than plaintiff satisfied fourth element of *prima facie* case (citing *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000))).[15]

## B.  Legitimate, Non-discriminatory Reason for Decision

Because Plaintiff has stated a *prima facie* case of discrimination on the basis of age and race, the burden shifts to Defendants to demonstrate a legitimate, non-discriminatory reason for their decision to hire Rizzo rather than Plaintiff for the full-time job.  Defendants state that Rizzo was chosen because of his four years of professional landscaping experience, his near perfect attendance record, his good work performance and attitude as a seasonal laborer in 2007, and the fact that he expressed interest in the position.  Defs.' 56.1 Stmt. ¶ 49; Ex. J, at 144; Ex. K, at 167; Ex. Q, ¶ 9.  Defendants claim that Plaintiff was not chosen for the position because of the numerous complaints about his work performance and attitude, and his lack of prior professional landscaping experience.[16]  Defs.' Mem. 5.  The rationale proffered by Defendants effectively satisfies their burden of production in articulating a legitimate, non-discriminatory reason for choosing Rizzo for the permanent position over Plaintiff.  *See, e.g.*, *Byrnie*, 243 F.3d at 102, 104-05 (promotion of candidate with inferior paper credentials who did not meet one of the minimum eligibility requirements because she performed better during an interview, "and thus seemed,

---

[15] The Second Circuit has held that a plaintiff who relies on a substantial age discrepancy between himself and the person who was hired over him to satisfy the fourth element of his *prima facie* case must also demonstrate that defendants had knowledge of that age discrepancy to support an inference of discriminatory intent.  *Woodman*, 411 F.3d at 77-83.  "[W]here such knowledge is undisputed, however, a court need not specifically address this point; rather it may be assumed."  *Saenger*, 706 F. Supp. 2d at 508 n.8 (internal quotation marks omitted) (quoting *Woodman*, 411 F.3d at 83).  Here, Defendants do not dispute that they were aware of the age difference between Plaintiff and Rizzo, and it is reasonable for the Court to assume that Defendants had knowledge of their approximate, relative ages based on the thirty-five to forty year age difference, as well as the dates that were included in their laborer test application forms relating to their educational backgrounds and work history.  Exs. N, O; *Saenger*, 706 F. Supp. 2d at 508 n.8.

[16] The Court accepts as true Plaintiff's assertion that he did not express interest in the full-time laborer position because he did not know about it until after Rizzo was hired, Pl.'s 56.1 Stmt. ¶¶ 38, 46; Pl.'s Mem. 2-3, notwithstanding the admissible evidence to the contrary submitted by Defendants, Ex. J, at 138; Ex. K, at 158, and thus disregards Defendants' reliance on Plaintiff's failure to express interest in the position as an additional reason for their decision to hire Rizzo over him.

based on subjective criteria, the better qualified candidate" was legitimate, non-discriminatory

reason for failing to promote plaintiff who did not perform well during interview despite his

objectively superior qualifications).

## C. Pretext

Because Defendants have articulated a legitimate, non-discriminatory reason for their

decision to offer the full-time position to Rizzo, the burden shifts back to Plaintiff to demonstrate

that Defendants' proffered non-discriminatory reason was pretextual—that is, that age and race

discrimination were the real reasons for the decision not to offer the full-time position to

Plaintiff.  Under Title VII, it is sufficient for Plaintiff to show that race discrimination was a

substantial or motivating factor for the adverse employment action, even if it was not the only

reason for Defendants' decision.  42 U.S.C. § 2000e–2(m); *see also Vargas v. Morgan Stanley*,

438 F. App'x 7, 9 (2d Cir. 2011).  For his ADEA claim to survive summary judgment, Plaintiff

must show "sufficient evidence upon which a reasonable jury could conclude by a

preponderance of the evidence that [his] age was a 'but for' cause of [Defendants'] decision."

*Gorzynski*, 596 F.3d at 107.

In an attempt to satisfy his burden at the third stage of the *McDonnell Douglas* test,

Plaintiff argues that:  (1) he was higher on the civil service list than Rizzo; (2) he was entitled to

preference for the position because he is a veteran of the U.S. military; (3) the civil service

commission posting for the position advertised that a CDL license was preferred for the position;

(4) the white supervisor who selected the candidate for the position, Anthony Tardibuono, has

never hired an African American permanent laborer since assuming his position; (5) Defendants

have provided "a series of shifting explanations" for why Plaintiff was not hired;[17] (6) Plaintiff

---

[17] To support this assertion, Plaintiff cites to two letters attached to his Memorandum.  Even assuming *arguendo* that the exhibits had been properly authenticated and were otherwise admissible, they do not support Plaintiff's argument

was "clearly the most qualified" candidate, because he had more experience as a seasonal laborer

than Rizzo; (7) the complaints about Plaintiff's job performance were untrue; and (8) there were

no African Americans working as full-time laborers in July 2007.  Pl.'s Mem. 1-3; Pl.'s 56.1

Stmt. ¶¶ 55, 57.  There is no evidence in the record to support Plaintiff's first five assertions,

most of which are also expressly contradicted by admissible evidence offered by Defendants.[18]

Plaintiff's remaining three arguments are addressed in turn below.[19]

### 1. Superior Qualifications and Seniority

In order to survive summary judgment, a plaintiff claiming that his employer's proffered

explanation for a failure to hire is pretextual based on purportedly stronger credentials must

demonstrate that his qualifications are "so superior to the credentials of the person selected for

the job that no reasonable person, in the exercise of impartial judgment, could have chosen the

candidate selected over the plaintiff for the job in question."  *Byrnie*, 243 F.3d at 103 (internal

quotation marks omitted).  This is a "weighty burden."  *Id.* (finding discrepancy between

---

that Defendants have offered "shifting" explanations for their decision to hire Rizzo, and the purported inconsistencies identified by Plaintiff are too trivial to raise a triable issue of material fact as to whether Defendants' proffered reasons for their decision are pretext for actual discrimination.  *Saenger*, 706 F. Supp. 2d at 513 n.12.

[18] Plaintiff's first four assertions are inadmissible, because they are not based on personal knowledge or supported by any other admissible evidence in the record.  With respect to the first three assertions, the Court also notes that Plaintiff stated that he did not have any basis to agree or deny with Defendants' assertions regarding the selection process and requirements for the permanent position in their Rule 56.1 Statement.  Pl.'s 56.1 Stmt. ¶¶ 39-40.  Plaintiff's third assertion is also expressly contradicted by Plaintiff's own assertion that the position was never posted.  *Id.* ¶¶ 38, 46, Pl.'s Mem. 2-3.  His fourth assertion is incorrect, as Tardibuono was not the individual who made the final decision to offer the full-time job to Rizzo.  Ex. L, at 174.  "Although in a ruling on a motion for summary judgment a court must assess the evidence in the light most favorable to the non-moving party, resolve all ambiguities, and draw all reasonable inferences in his favor, . . . the non-moving party cannot rely on mere allegations, denials, conjectures, or conclusory statements, but must present affirmative and specific evidence . . . . [A] court will not entertain inadmissible hearsay unsubstantiated by any other evidence on ruling on a summary judgment motion."  *Mattera*, 740 F. Supp. 2d at 566 n.2 (internal quotation marks and citations omitted).

[19] The Court has not addressed Plaintiff's assertion that he had "far more *years* of experience and service" than Rizzo, Pl.'s Mem. 1 (emphasis added), because it is undisputed that:  (1) Plaintiff had no professional landscaping experience prior to his four months of employment with the City in 2006; (2) Rizzo had four years of professional landscaping experience; and (3) Plaintiff had no personal knowledge of Rizzo's work experience.  Defs' 56.1 Stmt. ¶¶ 50-51; Ex. O.  The Court also has not addressed Plaintiff's assertion that all of the complaints about his job performance came from supervisors who were young and white, Pl.'s Mem. 2-3, because it is undisputed that only one of the three supervisors who complained about Plaintiff was young and white.  Defs.' 56.1 Stmt. ¶¶ 22, 25, 29.

credentials of plaintiff, who was undoubtedly, objectively more qualified than the person selected for the job, who failed to satisfy the minimal requirements for the position, insufficient alone to satisfy plaintiff's burden to demonstrate pretext).

Here, Plaintiff does not argue that Rizzo was unqualified for the position, only that he was less qualified than Plaintiff, based on Plaintiff's four months of work experience as a seasonal laborer in 2006.  Pl.'s Mem. 1.  While Plaintiff's experience as a seasonal laborer was relevant to the selection process insofar as Defendants considered prior landscaping experience in making a hiring decision, there is no evidence indicating that seniority—that is, prior service as a seasonal laborer with the Parks Department—was a criterion considered by O'Rourke, Tardibuono or Zimmerman.  *Diello v. Potter*, 413 F. App'x 344, 346 (2d Cir. 2011).  Moreover, it is undisputed that Rizzo had four years of professional landscaping experience, while Plaintiff had none, Defs.' 56.1 Stmt. ¶ 50, and that Plaintiff did not have any personal knowledge or information about Rizzo's work history or his performance as a seasonal laborer.  *Id.* ¶ 51.

Plaintiff's purely self-serving statement that he was "clearly the most qualified" for the position, without direct or circumstantial evidence to support the assertion, does not create a question of fact on the issue of discrimination.  *Hurd v. N.Y. Health & Hosps. Corp.*, No. 04 Civ. 998 (PAC), 2007 WL 678403, at *5 (S.D.N.Y. Mar. 5, 2007); *see also Witkowich*, 541 F. Supp. 2d at 582 ("An employer has the right to decide how it will value the various qualifications different candidates bring to the table." (citing *Scaria v.* Rubin, 117 F.3d 652, 654-55 (2d Cir. 1997))); *O'Leary*, 2007 WL 2244483, at *7 ("Defendant's decisions regarding the professional experience and characteristics sought in a candidate, as well as the search committee's evaluation of Plaintiff's qualifications, are entitled to deference." (quoting *Sarmiento v. Queens Coll.*, 386 F. Supp. 2d 93, 97-98 (E.D.N.Y. 2005))) (internal quotation marks omitted).  The only appraisals

of Plaintiff's performance in the record, which appear in the sworn testimony of Williams,

Maravilla, Fucile and O'Rourke, uniformly demonstrate that all of Plaintiff's supervisors

reported problems with his job performance and attitude.  Ex. G, at 80-85; Ex. H, at 99-101; Ex.

I, at 114-16; Ex. J, at 130-34.

A court will not second-guess an employer's non-discriminatory business decision.

*Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer

made a poor business judgment . . . generally is insufficient to establish a genuine issue of fact as

to the credibility of the employer's reasons.").  "The fact that a court may think that the employer

misjudged the qualifications of the [employees] does not in itself expose him to Title VII

liability." *Burdine,* 450 U.S. at 259; *see also Byrnie*, 243 F.3d at 103 (explaining that "'the court

must respect the employer's unfettered discretion to choose among qualified candidates'" when

evaluating whether its proffered reason for an adverse action was pretextual (quoting *Fischbach*

*v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996))).  "Only where an employer's

business decision is so implausible as to call into question its genuineness should this Court

conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara*

*USA*, 371 F. App'x 115, 118 (2d Cir. 2010).  That is not the case here.  As noted, Defendants

have proffered competent evidence tending to establish that Rizzo had more relevant experience

than Plaintiff and a better work performance history as a seasonal laborer.

### 2.  "Untrue" Complaints from Supervisors

Plaintiff does not cite to any evidence to support his claim that the complaints about his

work performance were "simply untrue."  Pl.'s Mem. 2.  After an assiduous review of the entire

record, it appears that Plaintiff challenged the veracity of one of the incidents that Williams

complained about in 2006 during his deposition in 2011.[20]  However, Plaintiff does not dispute

that all three of his supervisors made complaints about his job performance, or that their

complaints contributed to O'Rourke and Tardibuono's recommendation that Rizzo be hired for

the full-time position.  Further, Plaintiff does not argue, and there is nothing in the record to

suggest, that O'Rourke or Tardibuono had any reason to disbelieve the corroborated complaints

about Plaintiff's work performance and attitude.  Even assuming that Plaintiff had adequately

disputed the veracity of the complaints, that is insufficient to raise a material issue of fact on

pretext where, as here, Defendants relied on the complaints in good faith when making their

hiring decision.[21]  *Hargett v. N.Y. City Transit Auth.*, 640 F. Supp. 2d 450, 475-76 (S.D.N.Y.

2009), *aff'd sub nom Hargett v. Metro. Transp. Auth.*, 381 F. App'x 12 (2d Cir. 2010); *see also*

*Saenger*, 706 F. Supp. 2d at 508 ("It is not for the Court to decide whether these complaints were

truthful or fair, as long as they were made in good faith.").

### 3. Lack of African Americans Employed as Full-Time Laborers

Plaintiff's assertion that there were no African Americans working as full-time laborers

in July 2007 has limited, if any, probative value.  "Without considerably more analysis and

interpretation of why and how it came to be that" there were no African American full-time

laborers working for the Parks Department at that time, "that fact in isolation is of limited value

---

[20]  An excerpt of Plaintiff's deposition testimony submitted by Defendants indicates that Plaintiff claimed that Williams' complaint about Plaintiff cutting down flowers was "made up [] because he wanted to get his son over there . . . ." and "wanted to make [Plaintiff] look like the bad guy."  Ex. M, at 52.  Plaintiff claimed that he did not have any problems with Williams before Williams' son was hired, and that he did not cut down any flowers; however, he did not dispute the fact that Williams had made such a complaint.  *Id.* at 52-53. It is also important to note that Plaintiff does not attribute the purported falsification or exaggeration of the one disputed complaint to either racial animus or age discrimination.

[21] While the Court accepts as true Plaintiff's claim that he was never written up or spoken to about any performance problems, Pl.'s 56.1 Stmt. ¶¶  23, 27, 31-32, 34, 37, notwithstanding the admissible evidence in the record that O'Rourke spoke to Plaintiff about the complaints made by his supervisors on more than one occasion, Ex. J, at 130-32, Defendants' failure to warn him of their dissatisfaction with his job performance or attitude is not relevant to the issue of pretext where, as here, there is no evidence that Defendants had a policy or practice of giving such verbal or written warnings to seasonal laborers.

to the Court, [as n]o rational finder of fact could use this piece of information alone to infer that

[Defendants' hiring decision] was based on impermissible racial animus."  *Anderson v. Hertz*

*Corp.,* 507 F. Supp. 2d 320, 329 (S.D.N.Y. 2007) (finding insufficient evidence of discrimination

at *prima facie* stage of analysis where plaintiff was the only African American manager at a

particular site that was supervised by the superior who was alleged to have discriminated against

him for a twelve-year period), *aff'd*, 303 F. App'x 946 (2d Cir. 2008); *see also Saenger*, 706 F.

Supp. 2d at 516 (explaining that courts routinely reject statistical evidence that is anecdotal or

insufficiently complete to permit a reasonable inference of discrimination).

### 4. Hiring of a Younger, White Worker[22]

While being passed over for a substantially younger candidate or someone outside the

protected class is generally sufficient to create an inference of discrimination for a *prima facie*

case of discrimination, *Witkowich*, 541 F. Supp. 2d at 579, it is *not* sufficient to demonstrate that

a defendant's asserted non-discriminatory reasons for the failure to hire are pretextual.  *Antunes*

*v. Putnam/N. Westchester Bd. of Coop. Educ. Servs.*, No. 09-CV-3063 (CS), 2011 WL 1990872,

at *6 n.17 (S.D.N.Y. May 19, 2011).

Here, Plaintiff has not pointed to any statements made by any of his co-workers, or

supervisors that he believes related to his age or race (or that reflect age discrimination or racial

animus generally) and he does not point to any person who he views as having a bias against

older workers or African Americans.  In fact, Plaintiff failed to identify *any* individuals who he

believes discriminated against him anywhere in his complaint.  Moreover, the minimal inference

of discrimination arising out of Defendants' decision to hire Rizzo is undercut by the fact that:

---

[22] "[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual."  *Reeves*, 530 U.S. at 143 (internal quotation marks and citations omitted).

(1) Tardibuono—the only individual named anywhere in Plaintiff's submissions—testified that he "would have loved to have had" Rob Smith, one of the other African American part-time laborers in the Parks Department, as a permanent employee, if he had been eligible for the position, Ex. K, at 163;[23] (2) the Deputy Commissioner for the Parks Department is African American and was in his late 40s or early 50s at the time of the hiring decision, Defs.' 56.1 Stmt. ¶ 11; Ex. L, at 180-81; (3) among the fourteen full-time non-supervisory employees working under Parks Department Commissioner Zimmerman, two were African American men, one of whom was in his 50s and the other who was in his 70s, *Zenni v. Hard Rock Cafe Int'l, Inc.*, 903 F. Supp. 644, 654 n.15 (S.D.N.Y. 1995) (noting that defendant had provided evidence that two of the six people promoted during the period when plaintiff sought a particular position were within plaintiff's protected group in discussing weaknesses in statistical evidence submitted by plaintiff to support a failure to promote claim under Title VII); and (4) Zimmerman was approximately fifty-four years old when he made the decision to hire Rizzo over Plaintiff.  Ex. L, at 173; *Saenger*, 706 F. Supp. 2d at 510 n.9 (explaining that a number of courts have recognized that members of a protected class are less likely to discriminate against a fellow class member than are non-members of the protected class); *see also Pasha v. William M. Mercer Consulting, Inc.*, No. 00 Civ. 8362 RWS, 2004 WL 188077, at *10 (S.D.N.Y. Feb. 2, 2004) (noting that defendant had hired other members of the protected age group both prior to and following its decision not

---

[23] In their Rule 56.1 Statement, Defendants state that Smith and one other African American part-time laborer were not eligible for the full-time job because they had not taken the laborer's test, Defs.' 56.1 Stmt. ¶ 52; however, Defendants also state that "to work as a seasonal laborer, one must pass a laborer's examination administered by the City of New Rochelle."  *Id.* ¶ 18.  These statements appear contradictory; however, neither one is disputed by Plaintiff, and each statement is based on sworn testimony submitted by Defendants in support of their  motion.  It is not clear from the evidence in the record whether these two statements do in fact conflict, or if the statements reference two distinct exams—one that was required to become a seasonal laborer and a second one that was required to be placed on the "laborer's list."

to offer plaintiff employment in support of conclusion that plaintiff had not offered sufficient evidence of age discrimination to establish pretext), *aff'd*, 135 F. App'x 489 (2d Cir. 2005).

### 5. Totality of the Evidence of Discrimination

Examining the record as a whole, Plaintiff has failed to offer any evidence that Defendants' decision was actually motivated by discriminatory intent.  Plaintiff's argument is simply a conclusion:  he is African American and was, at the time of the relevant hiring decision, sixty-six years old; Defendants chose a younger, white candidate for the full-time position rather than Plaintiff; therefore, Plaintiff must have been passed over because he is African American and was sixty-six years old.  This is insufficient to defeat a summary judgment motion.  *Farias v. Instructional Sys.*, 259 F.3d 91, 99 (2d Cir. 2001) (affirming summary judgment where "[p]laintiffs failed to produce any evidence, other than conclusory statements unsupported by the record, to rebut the legitimate, nondiscriminatory reasons offered by [defendant], let alone evidence that could reasonably support a verdict in their favor.").  "[W]hen an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010); *see also, e.g.*, *Budde v. H & K Distrib. Co.*, No. 99–9449, 216 F.3d 1071, 2000 WL 900204, at *1 (2d Cir. June 29, 2000) (unpublished table decision) (affirming award of summary judgment because the plaintiff's conclusory assertions that she did not perform her job poorly and that customers did not complain did not suffice to create a genuine issue of dispute that her employer had received customer complaints and had terminated her because of poor performance).

Accordingly, even after drawing all reasonable inferences and resolving all ambiguities in Plaintiff's favor and interpreting Plaintiff's pleadings and opposition papers to state the strongest arguments they suggest, there is simply nothing connecting Plaintiff's age or race to Defendants' decision to offer the full-time position to Rizzo.[24]

## V. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED.  The Clerk of the Court is respectfully directed to terminate this motion, Doc. 14, enter judgment in favor of Defendants, and close this case.

It is SO ORDERED.

Dated:    September 4, 2012
          White Plains, New York

_____
Edgardo Ramos, U.S.D.J.

---

[24] Because Plaintiff's discrimination claims fail on the merits, the Court is not required to, and declines to, address Defendants' arguments that Plaintiff's state law claims are jurisdictionally barred and barred by the doctrine of *res judicata*. Defs.' Mem. 23-24.